**KRANJAC TRIPODI & PARTNERS LLP**
Xavier M. Bailliard
Mario M. Kranjac
30 Wall Street, 12th Floor
New York, New York 10005
Tel: (646) 216-2400
Fax: (646) 216-2373
xbailliard@ktpllp.com
mkranjac@ktpllp.com

*Attorneys for Plaintiff HNW Family Office AG*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HNW FAMILY OFFICE AG, | Civil Action No. 17-cv-7464 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| ART ASSURE LTD., LLC, | |
| Defendant. | |

Plaintiff HNW Family Office AG ("Plaintiff"), by and through its attorneys, Kranjac Tripodi & Partners LLP, by way of Complaint against defendant Art Assure Ltd., LLC ("Defendant"), hereby alleges as follows:

## INTRODUCTION

1. This is an action for breach of contract and for replevin arising out of Defendant's breach of its contractual obligations to Plaintiff by failing to pay Plaintiff $607,415 due Plaintiff under an agreement entered into by Plaintiff and Defendant.

## PARTIES

2. Plaintiff is a Swiss company which maintains its headquarters and principal place of business in Switzerland.

3. Defendant is a Delaware limited liability company which maintains its headquarters and principal place of business at 136 East 74'" Street, New York, New York 10021. Upon information and belief, at least one member of Defendant is a citizen of the United States. Plaintiff has no basis to believe that any of Defendant's members are citizens of a foreign state.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter under 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Defendant because it is authorized to do business in the State of New York, has an address in the State of New York, and regularly transacts business in the State of New York. In addition, in the agreement that is the subject of this lawsuit, Defendant agreed to submit to the jurisdiction of this court.

6. Venue is proper under 28 U.S.C. § 1391(b) and (c) because Defendant is subject to personal jurisdiction in the Southern District of New York and because a substantial part of the events or omissions that gave rise to this action occurred in the Southern District of New York.

## FACTUAL ALLEGATIONS

### I. Plaintiff and Defendant Enter Into the Agreement.

7. Plaintiff is in the business of providing asset management, integrated asset advice, wealth management, and financial planning services.

8. Defendant is in the business of financing the sale and purchase of valuable artwork.

9. In or around 2010, Plaintiff entered into a subscription agreement with Defendant, whereby Plaintiff invested $3,000,000 in Defendant.

10. Shortly thereafter, a dispute arose between Plaintiff and Defendant, as a result of certain improprieties committed by Defendant.

11. After protracted negotiations, Plaintiff and Defendant entered into an agreement (the "Agreement"), dated January 18, 2013, by which the parties agreed to resolve their dispute, and in which Defendant agreed to pay to Plaintiff the sum of $3,207,415. A true and correct copy of the Agreement is attached hereto as Exhibit A.

12. Paragraph 1 of the Agreement provides that Defendant is to pay Plaintiff (i) $2,500,000 immediately following the execution of the Agreement, (ii) $100,000 on or about each of March 31, 2013, June 30, 2013, September 30, 2013, December 31, 2013, March 31, 2014, and June 30, 3014, and (iii) $107,415 on September 30, 2014. See Ex. A at ¶ 1.

13. Paragraph 2 of the Agreement provides that "[i]n order to secure [Defendant's] obligation to pay [the $3,207,415] as provided in Paragraph 1 [of the Agreement], [Defendant] shall provide [Plaintiff] with a security interest in artwork having a fair market value at least equal to the outstanding portions of the [$3,207,415] from time to time, pursuant to a Security Agreement" … "which will be executed and delivered contemporaneously" with the execution of the Agreement. See Ex. A at ¶ 2.

## II. Defendant Executes and Delivers to Plaintiff a Security Agreement.

14. To induce Plaintiff to enter into the Agreement, Defendant executed and delivered to Plaintiff a security agreement, dated January 18, 2013 (the "Security Agreement"). A true and correct copy of the Security Agreement is attached hereto as Exhibit B.

15. Section 2 of the Security Agreement provides:

> As collateral security for payment by [Defendant] of the Amount in accordance with the Agreement [defined as $707,415, totaling the payments due on March 31, 2013, June 30, 2013, September 30, 2013, December 31, 2013, March 31, 2014, June 30, 3014, and September 30, 2014 under the Agreement], [Defendant] hereby

3

>grants to [Plaintiff] a continuing security interest in the following (the "Collateral"), wherever located:
>
>(a)     all of [Defendant's] right, title and interest in and to all the works of art identified on Schedule 1 hereto (which have been appraised at a fair market value in excess of the [$707,415]), and any works that may be substituted therefor in accordance with Section 3 hereto (the "Works");
>
>(b)     all of [Defendant's] right, title and interest in and to all proceeds recovered due to a casualty with respect to any Work; and
>
>(c)     all proceeds of any and all of the foregoing Collateral.

See Ex. B, § 2.

16.     Schedule I of the Security Agreement identifies the work of art "Zejtun (Malta Series #8) 1983 by Frank Stella" (the "Stella Artwork").  See Ex. B, Schedule I.

17.     Section 6 of the Security Agreement provides that "[i]f [Defendant] shall default in making payments of the [$707,415] and such default shall be continuing, [Plaintiff] may exercise in respect of the Collateral, in addition to other rights and remedies provided herein or otherwise available to it, all the rights and remedies of a secured party on default under the Code."  See Ex. B, § 6.

18.     On May 23, 2013, Plaintiff filed a UCC-1 financing statement with the Delaware Department of State, as instrument number 20131986943, which properly and specifically identifies Defendant as the debtor, Plaintiff as the secured party, and the Collateral.  A true and correct copy of the UCC-1 financing statement is attached hereto as Exhibit C.

19.     Plaintiff thus properly and timely perfected its security interest in the Collateral, thereby obtaining a perfected security interest in the Collateral.

### III.     Defendant Fails to Make Payment Under the Agreement and Defaults.

20.     On or about January 22, 2013, Defendant made a payment to Plaintiff in the amount of $2,500,000, pursuant to the Agreement.

21. On or about June 4, 2013, Defendant made a payment to Plaintiff of $50,000.

22. On or about June 11, 2013, Defendant made a payment to Plaintiff of $50,000.

23. However, after the June 11, 2013 payment, Defendant failed to make any of the remaining payments due under the Agreement.

24. Specifically, Defendant failed to make the required payments of $100,000 on each of June 30, 2013, September 30, 2013, December 31, 2013, March 31, 2014, and June 30, 2014, pursuant to the Agreement.

25. Defendant also failed to make the required payment of $107,415 on or about September 30, 2014, pursuant to the Agreement.

26. As of the date hereof, Defendant has repaid only $2,600,000 of the $3,207,415 it owes to Plaintiff, pursuant to the Agreement.

27. As such, as of the date hereof, there remains $607,415 due by Defendant to Plaintiff, pursuant to the Agreement.

28. Defendant has failed to make payment of the $607,415, despite due demands by Plaintiff.

29. As a result of Defendant's continuing failure to make the required payments, Defendant is in default of the Agreement, and Plaintiff is therefore entitled to exercise all of its remedies under the Agreement and the Security Agreement.

### FIRST COUNT
### (Breach of Agreement)

30. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 29 as if set forth in their entirety herein.

31. Plaintiff has complied with every obligation required of it under the Agreement and Security Agreement.

32. As alleged above, Defendant's failure to timely pay Plaintiff the various required payments as and when due under the Agreement constitutes a willful and deliberate breach of the Agreement.

33. As a direct and proximate result of the breach by Defendant of the Agreement, Plaintiff has suffered and is continuing to suffer damages of at least $607,415.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant awarding:

(a) compensatory damages;

(b) prejudgment interest and costs of suit; and

(c) such other and further relief as the Court may deem just and equitable.

### SECOND COUNT
### (Replevin)

34. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 29 as if set forth in their entirety herein.

35. Pursuant to the Security Agreement, Plaintiff holds a first priority perfected security interest in the Collateral, including, among other things, the Stella Artwork identified in Schedule I to the Security Agreement.

36. The Security Agreement provides that upon default of the Agreement by Defendant, Plaintiff "may exercise in respect of the Collateral, in addition to other rights and remedies provided herein or otherwise available to it, all the rights and remedies of a secured party on default under the Code."

37. Among the rights and remedies to which Plaintiff is entitled upon default by Defendant of the Agreement, are the surrender and delivery to Plaintiff of all of the Collateral,

including the Stella Artwork, in recognition of Plaintiff's rights as a secured party under the Agreement, Security Agreement, and applicable law.

38. Plaintiff's rights also include, without limitation, taking possession of, selling, or otherwise disposing of or dealing with the Collateral, including the Stella Artwork.

39. Defendant is in default of the Agreement.

40. However, Defendant has failed to deliver the Stella Artwork to Plaintiff.

41. As such, Defendant is wrongfully retaining possession of the Collateral, including the Stella Artwork, subject to Plaintiff's valid, first priority, and superior security interest, rights and remedies with respect to the Stella Artwork.

42. Pursuant to an appraisal, dated March 13, 2013, the Stella Artwork has a fair market value of $850,000.

43. Plaintiff is unaware of any valid defense Defendant may possess to Plaintiff's right to immediate possession of the Collateral, including the Stella Artwork.

44. Plaintiff therefore seeks an order instructing Defendant to immediately turn over the Collateral, including the Stella Artwork, to Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant:

(a) for issuance of a writ of replevin and/or an order of seizure directing such officers, persons or entities as may be applicable to levy upon, attach, garnish, take possession of, seize, and otherwise execute upon any or all of the Collateral, including the Stella Artwork, and deliver same to or for Plaintiff;

(b) awarding prejudgment interest and costs of suit; and

(c) awarding such other and further relief as the Court may deem just and equitable.

Dated: September 29, 2017   **KRANJAC TRIPODI & PARTNERS LLP**

By: <u>S/Xavier M. Bailliard</u>
Xavier M. Bailliard
Mario M. Kranjac
30 Wall Street, 12th Floor
New York, NY 10005
Tel: (646) 216-2400
Fax: (646) 216-237
<u>xbailliard@ktpllp.com</u>
<u>mkranjac@ktpllp.com</u>

*Attorneys for Plaintiff HNW Family Office AG*